UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYWEE GROUP LTD., <br><br> Plaintiff, <br> v. <br><br> HTC CORPORATION, et al., <br><br> Defendants. | CASE NO. C17-0932JLR <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND |

## I.  INTRODUCTION

Before the court is Defendants HTC Corporation and HTC America, Inc.'s (collectively, "HTC") motion to dismiss Plaintiff CyWee Group Ltd.'s ("CyWee") claims for induced infringement. (MTD (Dkt. # 35).) The court has considered the motion, the parties' submissions in support of and in opposition to the motion to dismiss, the relevant portions of the record, and the applicable law. No party has requested oral argument. Being fully advised, the court GRANTS HTC's motion to dismiss CyWee's induced infringement claims with leave to amend.

ORDER - 1

## II. BACKGROUND

This case concerns allegations of patent infringement. CyWee provides products and services in the areas of "motion processing, wireless high definition video delivery, and facial tracking technology." (Am. Compl. (Dkt. # 20) ¶ 2.) CyWee owns two patents protecting its technology that detects, measures, and calculates the movements and rotations of machines: United States Patent No. 8,441,438 ("the '438 Patent") and United States Patent No. 8,552,978 ("the '978 Patent") (collectively, "the Patents-in-suit"). (*Id.* ¶¶ 22, 120.)

The Patents-in-suit "disclose devices and methods for tracking the motion of a device in 3D space and compensating for accumulated errors." (Gans Decl. (Dkt. # 20-3) ¶ 8.)[1] In other words, the protected inventions "teach how to determine a device's current orientation based on motion data detected by its motion sensors." (*Id.*) Specifically, CyWee protected its "sensor fusion technology," which "incorporate[s] the data from multiple sensors and compensate[s] for [any] errors." (*Id.* ¶ 10.) The '438 Patent "discloses an enhanced sensor fusion technology and application for calculating orientation . . . by using measurements from both a 3-axis accelerometer and a 3-axis gyroscope." (*Id.*) The '978 Patent protects a similar sensor fusion technology but uses a third sensor—a magnetometer—in addition to an accelerometer and a gyroscope. (*Id.*

//

---

[1] The declaration of Dr. Nicholas Gans was attached to CyWee's amended complaint. (*See generally* Gans Decl.) The court may consider "documents attached to the complaint, [or] documents incorporated by reference in the complaint . . . without converting [a] motion [to dismiss] . . . into a motion for summary judgment." *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

¶ 11.) This sensor fusion technology is useful for games that incorporate the motion of the device into play, augmented reality applications, and virtual reality applications. (*See id.* ¶¶ 18, 21-22.)

CyWee initially sued HTC on June 16, 2017, and amended its complaint on July 6, 2017, alleging direct infringement of the Patents-in-suit as well as indirect infringement through inducement. (*See generally* Compl. (Dkt. # 1); Am. Compl.) As relevant here, CyWee asserts that HTC indirectly infringes the Patents-in-suit by:

> [i]nducing others to infringe on one or more claims of the [Patents-in-suit] through sale and/or use of the [Patents-in-suit] Accused Products. On information and belief, at least as a result of the filing of this action, HTC is aware of the [Patents-in-suit]; is aware that its actions with regards to distributors, resellers, and/or end users of the [Patents-in-suit] Accused Products would induce infringement; and despite such awareness will continue to take active steps—such as, creating and disseminating the [Patents-in-suit] Accused Products, and product manuals, instructions promotional and marketing materials, and/or technical materials to distributors, resellers, and end users—encouraging other's infringement of the [Patents-in-suit] with the specific intent to induce such infringement.[2]

(Am. Compl. ¶ 28.) CyWee also attaches two claim charts to its amended complaint illustrating how the HTC products infringe upon the Patents-in-suit. (*See* '438 Claim Chart (Dkt. # 20-1); '978 Claim Chart (Dkt. # 20-2).) Both claim charts include several screenshots—the majority of which do not derive from HTC—depicting the computing code that presumably is used by the accused products and how that code allows the accused products to perform the protected methods. (*See, e.g.,* '978 Claim Chart at 4-9.)

//

---

[2] CyWee includes this identical allegation of induced infringement for both Patents-in-suit. (*See* Am. Compl. ¶¶ 28, 126.)

ORDER - 3

HTC moves to dismiss only these induced infringement claims for failure to state a claim. (MTD at 1.)

### III. ANALYSIS

**A.     Legal Standard**

Dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the standard "asks for more than sheer possibility that a defendant has acted unlawfully," it is not "akin to a probability requirement." *Id.* Thus, the plausibility requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" liability for the alleged misconduct. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

F.3d 658, 661 (9th Cir. 1998). "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555). On a motion to dismiss, the court may consider the pleadings, documents attached to the pleadings, documents incorporated therein, or matters of judicial notice. *Ritchie*, 342 F.3d at 908 (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

**B.    CyWee's Induced Infringement Claims**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement has three elements: (1) knowledge of the patent, (2) knowledge that the induced acts will infringe, and (3) intent to bring about the infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, --- U.S. ---, 135 S. Ct. 1920, 1925, 1928 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("[I]nducement must involve the taking of affirmative steps to bring about the desired result."). Thus, CyWee must plead facts "plausibly showing that [HTC] specifically intended [its] customers to infringe the [Patents-in-suit] and knew that the customers' acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

HTC does not challenge the first element, knowledge of the patent. Instead, it focuses on the remaining two elements and argues that the induced infringement claims must be dismissed because CyWee fails to sufficiently allege (1) HTC's knowledge that the induced acts will infringe, and (2) HTC's specific intent to bring about the

infringement—specifically, any affirmative steps taken to cause others to infringe the Patents-in-suit. (*See* MTD at 1.) The court addresses each argument in turn.

1. End User Infringement

HTC argues that CyWee "alleges no facts showing how any third party's 'use' constitutes infringement of the Patents-in[s]uit" and thus fails to sufficiently plead HTC's knowledge that their end users' actions constitute infringement. (MTD at 6.) The court disagrees. "A plaintiff may sufficiently plead the knowledge required for induced infringement by alleging that it . . . inform[ed] [the defendants] of the patent and that their customers are infringing the patent by using their products." *Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC*, No. C15-0366JLR, 2016 WL 258524, at *4 (W.D. Wash. Jan. 21, 2016). The plaintiff need not allege that the defendant acknowledged infringement was occurring. *Id.* In *Intellicheck Mobilisa, Inc. v. Wizz Systems, LLC*, the plaintiff's allegations that it informed the defendant how the accused products infringe on specific claims in the patents-in-suit by using a claim chart with examples of such infringement were sufficient at the pleading stage. *Id.* at *3.

The same is true with CyWee's pleadings. CyWee informed HTC, through its claim charts, how HTC products infringe on specific claims in the Patents-in-suit. (*See generally* '438 Claim Chart; '978 Claim Chart.) These claim charts, along with the filing of the suit, inform HTC that several of its products utilize the methods protected by CyWee's Patents-in-Suit and that use of the accused products by its customers infringe upon the Patents-in-Suit as well. *See Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*, No. C16-0341JLR, 2017 WL 5634131, at *11 (W.D. Wash. Nov. 21, 2017) (allowing

post-suit knowledge to satisfy the knowledge element for indirect infringement). From these allegations, the court can draw the reasonable inference that HTC knew its customers, through the use of its accused products, were infringing upon the Patents-in-suit. *See Iqbal*, 556 U.S. at 678. At this stage, such a reasonable inference is sufficient. *See Bill of Lading*, 681 F.3d at 1341.

2. Specific Intent and Affirmative Steps by HTC

Nonetheless, the court grants HTC's motion to dismiss because CyWee has failed to sufficiently plead specific intent. A claim of indirect infringement "must contain facts plausibly showing that [the defendant] specifically intended their customers to infringe the [patents]." *Bill of Lading*, 681 F.3d at 1339. This scienter standard is demanding because the law is "reluctan[t] to find liability when a defendant merely sells a commercial product suitable for some lawful use." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc). Specific intent can be shown through circumstantial evidence, but "the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

Evidence of "active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 936. In other words, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936-37. "Courts have found inducement allegations sufficient when, for

example, the complaint contains 'factual allegations setting forth the similarities between the patent claims and the advertised features of the [defendant's] products.'" *Bascom Research LLC v. Facebook, Inc.*, Nos. C12-6293SI, C12-6294SI, C12-6295SI, C12-6296SI, C12-6297SI, 2013 WL 968210, at *5 (N.D. Cal. Mar. 12, 2013).

HTC argues both that (1) CyWee "alleges no facts that plausibly show that HTC took 'affirmative steps' to cause its end users or customers to infringe the Patents-in-[s]uit" (MTD at 4-5), and (2) the pleadings contain no factual allegations supporting specific intent in general (*id.* at 5).[3] CyWee, in response, points to its assertions that HTC continued to sell, promote, and disseminate product manuals and instructions to its distributors, resellers, and end users, even after learning of the alleged infringement. (Resp. at 5-8.) The court agrees with HTC that the pleadings as presented do not contain sufficient factual allegations for the court to reasonably infer specific intent.

CyWee is correct that generally, when "a party, with knowledge of another party's patent, advertises or promotes its product for use in an infringing manner, this is sufficient to support an inference that the promoting party intended to induce infringement." *CreAgri, Inc. v. Pinnaclife Inc.*, No. 5:11-cv-06635-LHK, 2013 WL 3958379, at *4 (N.D. Cal. July 29, 2013) (citing *Bill of Lading*, 681 F.3d at 1341-42); (*see* Resp. at 5). But, as expressly noted in the *CreAgri, Inc. v. Pinnaclife Inc.* quote, the

---

[3] HTC incorrectly suggests that the taking of affirmative steps and specific intent are two separate elements of induced infringement. (*See* MTD at 4-5 (describing the two as the first and second elements of inducted infringement).) Instead, the two concepts are intertwined, as affirmative steps taken by the defendant may be used to establish its specific intent. *See Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 936. Thus, the court considers HTC's two arguments together.

advertisement or promotion must advocate for "use in an infringing manner" for the court to reasonably infer specific intent. *See id.* "Where defendants have not touted the benefits of the accused products in ways that track the asserted patents, courts generally do not infer specific intent." *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1195 (D. Or. 2015) ("*Memory Integrity II*"). This requirement, that the post-knowledge actions teach an infringing use, ensures that "ordinary acts incident to product distribution, such as offering customers technical support or product updates, will not support inducement liability in themselves." *Id.* at 1193.

The cases that CyWee relies upon illustrate this distinction. In each of CyWee's cited cases, the complaint survives the motion to dismiss because the pleadings include specific factual allegations on how the defendant's actions were connected to infringing uses of the accused product. (*See* Resp. at 5-6, 8); *Bill of Lading*, 681 F.3d at 1341-43 (denying motion to dismiss when the pleadings included advertisements that specifically touted the ability of the accused products to perform the same functions as disclosed in the patent). For instance, in *CreAgri*, the plaintiff explicitly identified the defendant's website statements, YouTube videos, and a study conducted by the defendant which "promote[d] and encourage[d] [the defendant's] customers and study participants to use [the accused product] in a manner that allegedly infringes the [patent-in-suit]." 2013 WL 3958379, at *3. In *Intellicheck Mobilisa.*, the complaint identified the specific website where continued sales were being made and asserted that the manuals "instruct[ed] customers to operate those products to practice the claimed invention." 2016 WL 258524, at *1. In *Tranxition, Inc. v. Novell, Inc.*, the pleadings referenced a webpage as

evidence that the defendant continued to encourage use of its infringing software. No. 03:12-cv-01404-HZ, 2013 WL 2318846, at *5 (D. Or. May 27, 2013).

When, on the other hand, the defendant's actions do not recommend an infringing use, courts decline to infer specific intent. *See, e.g., Memory Integrity II*, 144 F. Supp. 3d at 1195. In *Memory Integrity*, the court dismissed the plaintiff's induced infringement claims twice: first with the original complaint, and then again after the plaintiff was granted leave to amend. *See generally Memory Integrity, LLC v. Intel Corp.*, No. 3:15-cv-00262-SI, 2015 WL 4251026 (D. Or. July 13, 2015) ("*Memory Integrity I*"); *Memory Integrity II*. In *Memory Integrity I*, the plaintiff alleged that the defendant acted with specific intent because it continued to provide instructions and technical support regarding the accused products. 2015 WL 4251026, at *2-3. The court observed, however, that the pleadings were silent on whether the instructions taught an infringing use; moreover, the pleadings did not allege that the defendant advertised the accused product for use in an infringing manner. *Id.* at *2-3. Accordingly, because the plaintiff pled "*no* specific facts regarding the instructions and technical support provided by [the defendant]," the court determined there was "nothing sufficient to permit the inference that [the defendant] *specifically* intended that its customers use its products in an infringing manner." *Id.* at *3.

The plaintiff returned with an amended complaint in *Memory Integrity II*, in which it added dozens of factual allegations, including several examples of the instructions and technical support provided by the defendant. 144 F. Supp. 3d at 1196. However, these examples "[did] not teach how to use [the accused products] to infringe [the

patents-in-suit], but simply describe how the [accused products] work." *Id.* Because the examples in the pleadings did not instruct on how to engage in infringing uses, the factual allegations "only establish[ed] that [the defendant] described features of the company's own products"—actions that evince "ordinary acts incident to product distribution" rather than "purposeful, culpable expression and conduct." *Id.* (internal quotation marks omitted) (quoting *Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 937).

The pleadings here resemble the allegations in *Memory Integrity*. Although CyWee asserts that HTC continued to create and disseminate product manuals, instructions, and marketing materials, it offers no specific details about those promotional and instructional materials. (*See* Am. Compl.) The court agrees with CyWee that it is not required to identify specific instructions at this stage. (*See* Resp. at 8); *Bill of Lading*, 681 F.3d at 1339. But without any inkling as to what HTC asserted in those materials, the court is unable to discern whether HTC "touted the benefits of the accused products in ways that track the asserted patents" or taught "how to use the [accused products] to infringe [the patents-in-suit]," rather than "simply describ[ing] how the [accused products] work."[4] *See Memory Integrity II*, 144 F. Supp. 3d at 1195-96. As such, the court cannot reasonably infer from CyWee's pleadings that HTC specifically intended for

//

//

---

[4] In its response, CyWee alleges that HTC advertises infringing use and provides instructions and a video specific to the motion-detection features of its accused products. (*See* Resp. at 10.) However, the court may not consider this material because it was neither included nor referred to in CyWee's amended complaint. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

its distributors, resellers, or end-users of its accused products to infringe upon the Patents-in-suit.[5] *See Memory Integrity I*, 2015 WL 4251026, at *3.

CyWee argues that the attachments to its amended complaint, namely the claim charts and Dr. Gans's declaration, permit the court to reasonably infer HTC's specific intent. (*See* Resp. at 6-7.) The court disagrees. Although the claim charts allow the court to infer that HTC had knowledge regarding its end-users' infringement, *see supra* § III.B.1, the claim charts do not demonstrate anything—directly or circumstantially—about HTC's intent. Indeed, the vast majority of the screenshots included in the claim charts do not derive from HTC at all: Only one out of the 22 screenshots originated from HTC. (*See* '438 Claim Chart; '978 Claim Chart.) Nor does Dr. Gans opine on HTC or any of its products. Instead, he describes only his understanding of the technology behind the Patents-in-suit and its advantages over prior art. (*See generally* Gans. Decl.) None of the attachments include factual assertions that allow the court to draw any reasonable inferences regarding HTC's state of mind.

Because CyWee does not plead sufficient factual allegations regarding HTC's continued actions after HTC learned of the alleged infringement, the court cannot reasonably infer that HTC specifically intended its distributors, resellers, or end users to

---

[5] To the extent CyWee is relying only on HTC's continued sales of the accused products, such sales alone do not support an inference that HTC specifically intended to induce infringement. The court agrees with *Memory Integrity II* that such reasoning is inconsistent with the Federal Circuit's reasoning in *Bill of Lading*. *See* 144 F. Supp. 3d at 1195. In *Bill of Lading*, the Federal Circuit went "far beyond considering whether the defendant continued to sell the allegedly infringing products" and considered, in addition, the content of the defendant's advertisements and product literature. *Id.* (citing *Bill of Lading*, 681 F.3d at 1341-43). Accordingly, the court will not infer specific intent from the continued sales of the accused products alone.

infringe the Patents-in-suit. Accordingly, on this ground, the court grants HTC's motion to dismiss CyWee's induced infringement claims.

C. **Leave to Amend**

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

CyWee requests leave to amend its complaint should the court grant HTC's motion (Resp. at 9-11), and HTC does not oppose amendment (Reply (Dkt. # 40) at 8). The court agrees. There is no evidence of undue delay, bad faith, or dilatory motive on CyWee's part, nor is there any indication that HTC will suffer prejudice if the court permits amendment, especially in light of HTC's lack of opposition to amendment. *See Foman*, 371 U.S. at 182. Further, although CyWee has previously amended its complaint, it amended as of right and without any indication from the court that the original complaint was defective. *See id.* Finally, it is not clear that the deficiencies in the complaint could not be cured by amendment. *See id.* at 182. Indeed, CyWee cites material in its responsive briefing that it "expects to cite" if given a chance to amend.

(Resp. at 11.) The court therefore grants CyWee leave to amend its induced infringement claims within ten (10) days of the entry of this order.

IV. CONCLUSION

For the foregoing reasons, the court GRANTS HTC's motion to dismiss CyWee's claims of induced infringement (Dkt. # 35). The court DISMISSES CyWee's induced infringement claims without prejudice and GRANTS CyWee leave to amend those claims within ten (10) days of the date of this order.

Dated this 1ST day of March, 2018.

JAMES L. ROBART
United States District Judge